UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

John J. Gosselin

   v.                                            Civil No. 05-cv-050-PB

Stephen J. Curry, et al.

### REPORT AND RECOMMENDATION

John J. Gosselin brought suit against employees of the New Hampshire Department of Corrections ("NHDOC") in a complaint filed on February 11, 2005 (document no. 3). The suit alleged that the defendants had violated Gosselin's rights under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, et seq. In an Order dated May 19, 2005 (document no. 4), I directed Gosselin to amend his complaint to demonstrate his ability to state a claim upon which relief might be granted. After obtaining filing deadline extensions (document nos. 5 & 7) for several months, Gosselin filed an amended complaint (document no. 9) on September 14, 2005.[1] The amended complaint raises claims against the defendants under both the ADA and 42 U.S.C. § 1983 and requests monetary, declaratory, and injunctive relief.

---

[1]Gosselin sent a letter with the amended complaint indicating that he would be filing further addenda or motions to amend the complaint. However, no additional filings have been received.

For the reasons stated herein, I find that Gosselin has not succeeded in stating any claim upon which relief might be granted and I now recommend dismissal of this action.

### Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action *pro se* and *in forma pauperis*, the magistrate judge is directed to conduct a preliminary review and to prepare a report and recommendation advising the district judge whether the complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2). In conducting the preliminary review, the Court construes *pro se* pleadings liberally. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe *pro se* pleadings liberally in favor of the *pro se* party). "The policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the

correct cause of action, even if it was imperfectly pled." <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>, <u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). Application of this standard ensures that *pro se* pleadings are given fair and meaningful consideration. <u>See</u> <u>Eveland v. Dir. of C.I.A.</u>, 843 F.2d 46, 49 (1st Cir. 1988).

<u>Background</u>[2]

John Gosselin is a "schizophrenic insomniac" who has been in the custody of the NHDOC since 1987. From 1990 until 2004, Gosselin was housed in North Unit, a relaxed and trouble-free medium security housing unit at the New Hampshire State Prison ("NHSP"). In March of 2004, Gosselin was transferred to H-

---

[2]Because Gosselin is *pro se*, I will consider the facts alleged in both his initial complaint and his amended complaint in conducting this review to insure that I have provided him with every opportunity to state a claim upon which relief might be granted.

Building at NHSP, which Gosselin describes as a tense, overcrowded, and violent facility. Gosselin complained about his placement in H-Building and was transferred to the Northern New Hampshire Correctional Facility ("NCF"). Gosselin remained housed at NCF at the time his amended complaint was filed.

Gosselin alleges generally that his serious mental illness prevents him from "functioning adequately" outside of a rarified environment. Gosselin asserts that his continuous housing transfers have rendered him unable to function as they have rendered him unable to obtain the maximum positive effect of his psychopharmaceutical course of treatment. Accordingly, Gosselin has repeatedly requested transfer to a "Residential Treatment Unit" that Gosselin alleges the NHDOC was court-ordered to maintain in 2003.[3] Gosselin's housing requests took the form of a request to stop the transfers as a "reasonable accommodation" of his mental illness under the ADA. Gosselin sent requests for a "reasonable accommodation" to LaCasse, Cattell, and Curry in November and December of 2004. All of his requests were denied.

---

[3]Gosselin alleges that an order of this Court required the NHDOC to have an operational residential mental health treatment facility by July of 2003. I cannot locate any such Order of this Court. Even if such an Order existed, however, Gosselin has not demonstrated that he has any right to be housed in a particular unit, so further inquiry into this issue is unnecessary.

4

Before his transfer to NCF, Gosselin requested to remain at the NHSP so that he could be closely monitored by the Mental Health Unit there.  In January of 2005, however, after he complained of the behavior of NHSP staff, Gosselin was moved to NCF.  Gosselin then requested that his mental condition be closely monitored by the Mental Health Unit, alleging, again, generally, that he was receiving clinically inappropriate treatment of his mental illness at the NCF.  Specifically, Gosselin alleged, and alleges in his complaint, that he is unable to function adequately without a safe housing environment, he is not able to obtain more effective psychopharmaceutical treatment due to his constant moves, and that he is unable to participate in and attend a variety of programs offered by the NHDOC, including yoga and other recreational activities and religious services.

## Discussion

1.   ADA Claim

Gosselin was previously directed to amend his complaint to demonstrate that he was able to state a claim under the ADA upon which relief might be granted.  In my Order, I set out the elements necessary to state a successful ADA claim, as follows:

>Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Pursuant to the plain language of Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. <u>Parker v. Universidad de P.R.</u>, 225 F.3d 1, 5 (1st Cir. 2000).

<u>See</u> Order of May 19, 2005 at *5-6 (document no. 4).  While Gosselin now alleges a specific mental health diagnosis and that he was denied access to yoga, religious services and recreational activities as a result of his housing transfers, he has still not stated any facts to support a conclusion that he was excluded from that programming in a discriminatory fashion because of his mental disability.  To date, the only reason presented in either complaint for Gosselin's housing transfers was LaCasse's indication that Gosselin's own behavior caused him to be transferred.

2.   <u>42 U.S.C. § 1983 Claims</u>

   A.   <u>Right to Particular Housing</u>

   Prison inmates do not have any liberty interest in where

6

they are housed, and transfers within the prison are well within the discretion of the NHSP and are not protected by state or constitutional law.  See Olim v. Wakinekona, 461 U.S. 238, 244 (1983) (citing Meachum v. Fano, 427 U.S. 215 (1976), and Montanye v. Haymes, 427 U.S. 236 (1976), cert. denied, 431 U.S. 967 (1977), to support the conclusion that prisoners have no liberty interest protecting them from housing transfers).  In addition to the fact that the prison cannot house Gosselin in a residential treatment unit that does not exist, the prison has no obligation to house Gosselin in a unit that is geographically close to the mental health unit.

B.   Right to Adequate Medical and Mental Health Care

Liberally construing the complaint, Gosselin has attempted to state a claim for inadequate mental health care because he was not housed in a residential treatment unit or in a place where he could be closely monitored by the NHSP's mental health unit.  The Eighth Amendment protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1994).  To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that the

plaintiff has a serious medical need for which adequate care has not been provided. Farmer, 511 U.S. at 831; Rhodes v. Chapman, 452 U.S. 337 (1981); Estelle, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment. Id. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995) (defining a serious medical need as one "'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"). The Eighth Amendment's guarantee of adequate medical care applies to both mental health and physical health needs. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

"Adequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community,

tailored to an inmate's particular medical needs, and that are based on medical considerations.  <u>United States v. DeCologero</u>, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care."  <u>Torraco</u>, 923 F.2d at 234.  Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 302 (1991).

In this case, accepting all of Gosselin's allegations as true, Gosselin has alleged that he has a serious mental health diagnosis for which treatment is required, and that the NHDOC has recognized his need for treatment by placing and keeping him on psychopharmaceutical medications.  Although Gosselin indicates that he would prefer to be in residential treatment and that he is not receiving the maximum benefit of medication, he has not alleged that any employee of the NHDOC has denied him access to treatment for his known serious mental health needs or that he is

constitutionally entitled to a different course of treatment than what he has been placed on.  Gosselin's desire to be treated in a different environment in order to receive a greater benefit from his medication, even if reasonable, is not mandated by the Eighth Amendment.

## Conclusion

For the foregoing reasons, I find that Gosselin has failed to state a claim upon which relief might be granted.  Accordingly, I recommend that this action be dismissed.  Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:      February 3, 2006

cc:        John J. Gosselin, *pro se*